[Civ. No. 12481.   Second Appellate District, Division Two.—November 22, 1940.]

HARVEY JOHNSON, Respondent, v. SOUTHWESTERN ENGINEERING COMPANY (a Corporation) et al., Defendants; JOHN OPSTAD, Appellant.

Nourse & Jones for Appellant.

Parker & Stanbury, Harry D. Parker, Raymond G. Stanbury, and White McGee, Jr., for Respondent.

WOOD, J.—This appeal is prosecuted by John Opstad from a judgment entered against him on his cross-complaint

after a jury trial. The litigation resulted from a collision of two automobiles at the intersection of two desert roads. Appellant filed an action in Kern County on July 29, 1938, naming as defendants Harvey Johnson, the driver of one of the cars, and A. J. Bruce, its owner. On August 1, 1938, Johnson filed the action in which this appeal is taken, naming as defendants appellant Opstad and his employer, Southwestern Engineering Company. Appellant filed a cross-complaint and this action was brought to trial. The jury returned verdicts in favor of the plaintiff Johnson and the cross-defendants. An appeal was taken by both Opstad and Southwestern Engineering Company but a stipulation has been filed providing for the satisfaction of the judgment in favor of Johnson on his complaint and specifically setting forth that Opstad retains the right to prosecute his appeal from the judgment entered on his cross-complaint.

The accident occurred on June 9, 1938, at about 11:00 A. M. at the intersection of two roads in the desert. Gold Queen Road, which runs north and south, is 21 feet in width and is paved to the intersection. Cactus Queen Road extends east and west and is a dirt road 28 feet in width. At the time of the collision the weather was clear and the roads were dry. Opstad was driving a 1932 Packard sedan in an easterly direction on Cactus Queen Road and Johnson, who was driving a 1932 Chevrolet pick-up truck, was traveling south on Gold Queen Road. Both roads were lined on each side by sage brush approximately three and one-half feet high and were from eighteen inches to two feet below the grade of the land at the northwest corner of the intersection. The only testimony as to the manner in which the accident occurred was that of Opstad—plaintiff Johnson having no memory of any of the events prior to the actual impact of the two cars and having been totally unaware of the presence of Opstad's car at the intersection.

From the testimony of Opstad it appears that when he had reached a point from 250 to 300 feet from the intersection he first observed the truck driven by Johnson, which was then about 500 or 600 feet north of the intersection. Opstad was then driving at a speed of from 25 to 30 miles an hour while Johnson's speed was between 60 and 70 miles an hour. Upon reaching a point about 25 or 30 feet from the intersection Opstad again observed the truck, which was

then 40 to 50 feet from the intersection and was traveling at a reduced speed of 45 to 50 miles an hour. Just as he entered the intersection Opstad again saw the truck, which was then 25 feet from the intersection. He proceeded through the intersection without again looking at the truck until he reached a point in the southeast part of the intersection near the eastern boundary of Gold Queen Road, where the truck collided with his car. Immediately prior to the accident the truck swerved from the right hand (west) side to the left hand side of Gold Queen Road, thereby causing the right front corner of the truck to strike the left side of Opstad's car. There is no evidence that Opstad ever saw Johnson's person, before the impact, the only testimony being that he observed the truck. Johnson made the following statement to Opstad at the scene of the accident: "I must have fallen asleep . . . I was going too fast . . . it was all my fault . . . I didn't see your car."

Upon this state of the evidence the court, at Johnson's request, instructed the jury relative to the doctrine of last clear chance. It is claimed on this appeal that the evidence fails to disclose the existence of all of the elements necessary for the application of this doctrine and that as a result the court admitted prejudicial error in so instructing the jury.

In *Girdner* v. *Union Oil Co.*, 216 Cal. 197, at page 202 [13 Pac. (2d) 915], the court sets forth the elements which must be shown to exist before the doctrine of last clear chance may properly apply: "That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; that this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation, and has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure." If any one of these elements is not shown by the evidence to exist the doctrine of last clear chance is not applicable. In the Girdner case the court pointed out that the failure of a defendant to use ordinary

care in circumstances where the doctrine of last clear chance is applicable may well be termed wilful and wanton and under such circumstances contributory negligence upon the part of the injured person will not defeat a recovery.

■ It is clear that in the present action the evidence fails to establish all of the elements necessary to make applicable the doctrine of last clear chance. There is no evidence whatever that Opstad had knowledge that Johnson was in a position of danger and there is no evidence whatever that Opstad had knowledge that Johnson was unaware of the true situation. In *Bogardus* v. *Snyder,* 17 Cal. App. (2d) 411 [62 Pac. (2d) 153], the court in concluding that the doctrine of last clear chance did not apply observed: ''But, if we take the stand that plaintiff was in a position of danger from which he could not extricate himself, because he was unaware of his danger, and hence could not bring ordinary care into play, then it appears that defendant did not know that he was so situated, because she did not know that plaintiff was unaware of his danger . . . '' . The cases of *Girdner* v. *Union Oil Co., supra,* and *Center* v. *Yellow Cab Co.,* 216 Cal. 205 [13 Pac. (2d) 918], which are relied upon by Johnson in support of his claim that the doctrine of last clear chance was properly applied, are easily distinguishable. In each of these cases the defendant actually saw that the plaintiff was unaware of his predicament. In the present case the dangerous predicament which Johnson was in was due solely to the fact that he was unaware of the situation—of which fact Opstad had no knowledge.

■ Since all of the essential elements are not present, it was reversible error for the court to instruct the jury on the doctrine of last clear chance. (*Erwin* v. *Morris,* 10 Cal. App. (2d) 168 [51 Pac. (2d) 149]; *Wallis* v. *Southern Pac. Co.,* 184 Cal. 662 [195 Pac. 408, 15 A. L. R. 117].)

The only reasonable conclusion that may be reached from the evidence is that Opstad reached the intersection first after observing the approach of the truck and noting that its speed had been decreased from 60 to 70 to 45 or 50 miles an hour, that at no time prior to the accident did he know that Johnson was unaware of his situation, that in proceeding through the intersection he unquestionably had the right of way, that after his car had reached a point in the southeast part of the intersection there was ample room to

the rear of his car for Johnson's truck to pass safely through the intersection, and that there was nothing in the situation which would cause him to believe that the truck would swerve to the left or wrong side of the road and thus collide with his car after he had reached a place of apparent safety near the east boundary of the intersection. The situation thus presented is similar in principle to that which the court had under consideration in *Richardson* v. *Ribosso*, 120 Cal. App. 641 [8 Pac. (2d) 226], where it was held that the doctrine of last clear chance was not applicable. In that case the defendant was driving an automobile along a street and while so doing observed the plaintiff's minor son playing on the sidewalk and saw him suddenly start to run obliquely across the street upon which the defendant was traveling. The minor continued on his course without looking in the direction he was traveling and ran into the left side of the defendant's automobile. The court appropriately observed at page 642 that: "The reasonable inference to be drawn from this evidence is that, after the defendant had passed the course upon which the boy was traveling, he had no reason to anticipate that the boy would continue without looking . . . " In the instant case it is apparent that, after Opstad had passed the center of the intersection, he had no reason to anticipate that Johnson would continue without looking and no reason to anticipate that he would suddenly veer from his proper course to the wrong side of the road. ■ In the exercise of ordinary care Opstad was not called upon to anticipate that Johnson would violate the law by failing to maintain a lookout, by driving on the wrong side of the road and by failing to yield the right of way. It must be borne in mind that Opstad had no knowledge that Johnson had "fallen asleep".

The evidence of the physical facts as well as Opstad's testimony compel the conclusion that Johnson was not in a position of danger from which he could not escape until after he had swerved his truck to the east side of Cactus Queen Road, at which time Opstad had traversed the greater part of the intersection. As Opstad approached the intersection he noted that the speed of the truck was less than it had been when he first saw it. If Johnson had continued in the course he was traveling while Opstad observed his approach to the intersection the collision would have been avoided.

Opstad testified that he did not see the truck swerve from its former course. Manifestly, Opstad did not have a clear chance to avoid the accident. The doctrine of last clear chance ''says to a negligent plaintiff that in spite of his lack of caution he will be protected against wanton, wilful or avoidable harm``. (*Erwin* v. *Morris, supra.*) The doctrine is not here applicable, for Opstad, not knowing that Johnson had fallen asleep, did not know that he was in a position of danger and did not have the opportunity of avoiding the collision.

The judgment on the cross-complaint is reversed, cross-complainant to recover costs on appeal.

McComb, J., concurred.

MOORE, P. J., Dissenting.—I dissent. The conclusion reached by the majority opinion is not consistent with the law and is contrary to the decisions of the Supreme Court for the reason that it rejects the implied findings of the jury and rules, as a matter of law, that Opstad did not have knowledge of Johnson's perilous position and further that Opstad did not know or that he did not have reason to believe that plaintiff was oblivious of the danger and that he was in a position from which he could not extricate himself. Except for the omission of some pertinent facts hereinafter set forth, the *résumé* recited constitutes a fair summary of the testimony presented to the jury.

It is there said that Opstad, while travelling at a speed of 25 to 30 miles per hour and while at a distance of 250 to 300 feet west of the intersection first observed the truck of Johnson approaching 500 to 600 feet north of the intersection travelling at a speed of 60 to 70 miles per hour. It then proceeds to say that upon reaching a point 25 to 30 feet from the intersection, Opstad again observed the truck which was then 40 to 50 feet from the intersection and was travelling at a reduced speed of 45 to 50 miles an hour. From these statements, two inferences are drawn, viz.: (1) that Opstad did not observe the truck at any time between the point 500 feet north of the intersection and its position 40 to 50 feet from the intersection, and (2) that plaintiff did in fact reduce his speed from 60–70 to 40–50, and the authors of the opinion, having drawn those inferences, conclude that the triers

of the facts must have drawn the same inferences and if they did not, then they should have done so. But let us supplement the statement of the evidence contained in the opinion.

The police officer testified: "Mr. Opstad told me . . . when he got approximately within 200 feet of the intersection of Gold Queen Road and Cactus Queen Road, he noticed a south bound car on Gold Queen Road, which was, at that time approximately two to three hundred feet north of the intersection, and they both arrived at the intersection at approximately the same time, and he . . . Mr. Opstad . . . thought that the car on the Gold Queen Road would yield the right of way to him, and so he kept proceeding, but on seeing that the south-bound car was not going to yield the right-of-way, he applied his brakes and then the crash".

Referring to Opstad's view of the truck, he testified at the trial: "You could see part of it all the time . . . " that he saw the truck at various times "from the time he was 300 feet west of the intersection until he had reached a point 25 feet west of the intersection." He further testified: "When I was 250 or 300 feet from the intersection . . . he was approximately twice as far as I was". When asked: "During all that time you did not put your brakes on or did you?" he answered: "No, sir . . . I went right through". From the first time he saw the Chevrolet until he reached the intersection, "he must have been driving between 60 and 70" and when asked: "And the speed of the Chevrolet pickup never slowed down at all, *it kept going at the same speed?*" Opstad answered: *"It seemed to be going at the same speed".* Later, however, he testified that, when it was at point 0.2 (40 to 50 feet north of the intersection) "It was going at a pretty good speed . . . around 50, 45 or 50, in that neighborhood . . . it was going pretty fast". From these statements, it was a fair inference that Opstad knew that the plaintiff was approaching the intersection at a speed of 60 to 70 miles per hour and that plaintiff did not reduce or alter the speed of the truck. The fact that the witness gave contradictory testimony merely presented an additional question of fact and entitled the jury to accept or reject whatever version it chose. (*People* v. *Crownover,* 34 Cal. App. (2d) 7 [92 Pac. (2d) 929].)

The majority opinion states that immediately prior to the accident the truck swerved from the right hand side to the left hand side of Gold Queen Road, but the police officer who inspected the premises testified that he found no marks indicating a swerving of the truck prior to the impact. A map of the premises was introduced in evidence upon which Opstad in the presence of the jury located the position of the truck on the map when it was at a point 40 to 50 feet north of the intersection, and again where it was after the impact. In answer to the question what course did the Chevrolet take from the point 0.2, his answer was, "Well, it was in the center of the road and he was on the left and right and all over the road". If the jury believed that plaintiff drove at 70 miles per hour and was in the center of the road and on its right and left and "all over the road" they would have been justified in inferring that plaintiff was helpless to avoid a collision and in concluding that Opstad perceived plaintiff's predicament or by the exercise of ordinary care should have perceived it. (*Wallis* v. *Southern Pac. Co.*, 184 Cal. 662, 673 [195 Pac. 408, 15 A. L. R. 117]; *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 Pac. (2d) 915]; 45 Cor. Jur. 990, sec. 542. See, also, discussion, 2 Cal. Jur. Supp. 156, sec. 104.) Hence it was the duty of the court to instruct, as was done, upon the doctrine of the last clear chance. The fact that Opstad never saw the person of Johnson prior to the impact is of little consequence in view of the following facts: (1) the truck when first seen by Opstad was travelling 60 to 70 miles per hour; (2) the truck was driven on a paved boulevard 21 feet wide; (3) as Opstad arrived at the intersection, he was driving slowly upon a dirt road 28 feet wide; (4) when the truck was 40 to 50 feet north of the intersection Opstad saw that it was going 60 to 70 miles per hour; (5) at the time Opstad arrived at the west line of the intersection, the truck was only 25 feet north of the intersection or was at the intersection and its speed was either "reduced" to 75 feet per second, or it had not changed its speed from 105 feet per second; (6) from his position, according to his own testimony, Opstad saw that the truck was "all over the road" after it passed the point 0.2 or that it continued straight, either of which evidenced ignorance of his danger; (7) Johnson never sounded any warning signal of approach.

There was no question of plaintiff's negligence and of its continuance to the moment of the accident. From the facts before the jury, they determined under proper instructions that plaintiff was in a position of danger from which he could not extricate himself by the exercise of ordinary care; that plaintiff was unconscious of his own peril; that Opstad realized plaintiff's peril, or in the exercise of ordinary care should have known it and should have exercised the last clear chance to avoid injuring plaintiff.

In my opinion the cases of *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 Pac. (2d) 915], and *Center* v. *Yellow Cab Co.*, 216 Cal. 205 [13 Pac. (2d) 918] justify the jury's verdict. It should not be expected that the facts which constitute the bases of those decisions would be identical with the facts of the case under consideration. The question is whether or not the facts of the instant case are such as would warrant the application of the principle announced by those authorities. In both *Girdner* v. *Union Oil Co.* and *Center* v. *Yellow Cab Co.*, the defendant saw the perilous position of the plaintiff; in each of them the defendant perceived that the plaintiff was unconscious of his peril and that plaintiff could not be relied upon to avert the collision. By the exercise *of reasonable care Opstad would have seen that plaintiff could not, by the exercise of extraordinary care,* have stopped his truck before crossing the intersection and could have observed that plaintiff was unaware of his own peril. Surely, it cannot be the law that one in Opstad's position as he entered the intersection could shut his eyes to the danger of Johnson's flying truck and avoid his obligation by declaring that he did not see it or that he himself had the right of way. It was Opstad's duty to avoid an impact if he had the last clear chance to do so. It cannot be said that the negligence of plaintiff was the proximate cause of his injuries for the reason that if defendant had the last clear chance to avoid the injury, the chain of causation, begun with plaintiff's contributory negligence, was broken and defendant's refusal to act to avoid an impact became the proximate cause. "Whether the negligence is the proximate or remote cause depends upon the facts in the particular case". (*Center* v. *Yellow Cab, supra; Girdner* v. *Union Oil Co., supra; Carrillo* v. *Helms Bakeries,* 6 Cal. App. (2d) 299 [44 Pac. (2d) 604]; *Palmer* v. *Tschudy,* 191 Cal. 696 [218 Pac. 36].) In considering the

foregoing authorities, the majority opinion has erred in concluding as a matter of law that Opstad had no knowledge of the fact that Johnson was unaware of his peril, whereas it was a fact to be determined by the jury whether plaintiff was in a position of peril from which he could not extricate himself; whether Opstad could perceive, or by the exercise of ordinary care should have perceived that plaintiff was unaware of his peril, and whether by continuing across the highway Opstad would probably cause a collision, or by stopping he could avoid it. Plaintiff's negligence is not the proximate cause of his injuries where he was oblivious of his danger and where the defendant, on seeing his plight and that he was unaware of it, had the power by the exercise of ordinary care to avoid a collision and failed to exercise his last clear chance to avoid the accident.

The cases relied upon by appellant are not in point and hence do not control. (*Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 Pac. 259]; *Behne* v. *Pacific Elec. Ry. Co.*, 30 Cal. App. (2d) 437 [86 Pac. (2d) 843]; *Bogardus* v. *Snyder*, 17 Cal. App. (2d) 411 [62 Pac. (2d) 153]; *Leblanc* v. *Coverdale*, 213 Cal. 654 [3 Pac. (2d) 312]; *Keyes* v. *Hawley*, 100 Cal. App. 53 [279 Pac. 674].) In *Behne* v. *Pacific Elec. Ry. Co.*, *supra*, the doctrine was not applicable because there was no evidence as to when plaintiff reached a position when the doctrine of last clear chance could be applied. In *Bogardus* v. *Snyder*, *supra*, two cars had collided at an intersection, plaintiff going in excess of 20 miles per hour, defendant in excess of 30 miles per hour. It was clear that the defendant did not have a chance to avoid the accident by the exercise of ordinary care; the plaintiff had a better chance to avoid the accident than did the defendant who was driving more slowly. In *LeBlanc* v. *Coverdale*, the doctrine did not apply as "the question of plaintiff's negligence was rightfully left to the jury, and its determination thereof was, in our opinion, in accordance with the great preponderance of the evidence". In the case of *Keyes* v. *Hawley*, 100 Cal. App. 53 [279 Pac. 674], "because of the want of any proof of negligence on the part of the appellant" (defendant) the judgment was reversed. The cases of *Erwin* v. *Morris*, 10 Cal. App. (2d) 186 [51 Pac. (2d) 149], and *Wallis* v. *Southern Pac. Co.*, 184 Cal. 662 [195 Pac. 408, 15 A. L. R. 117], are also distinguishable. In the Erwin case, plaintiff was parked upon

the right side of the highway to repair his windshield wiper. The defendant approached plaintiff properly and at a point about 60 feet behind plaintiff, defendant pulled across the center of the highway in order to pass plaintiff's parked car. In the course of passing, her car skidded into plaintiff's car. It was obvious that the defendant did not have the last clear chance to avoid colliding with the plaintiff after defendant's car began to skid. By the exercise of no amount or degree of care could the defendant have avoided striking plaintiff's car after her own car began to skid. In the Wallis case, the engineer used every means available to stop his train. He thereby avoided liability that might have arisen because of the last clear chance. In the case of *Basham* v. *Southern Pac. Co.,* 176 Cal. 320 [168 Pac. 359], when the fireman discovered that the driver of the wagon approaching the track was inattentive, he gave urgent orders to the engineer to stop. He had no reason to realize the danger sooner or had no "cause to realize it sooner". Hence in these cases the last clear chance doctrine never came into operation.

The majority opinion compares the facts of the instant case to those in the case of *Richardson* v. *Ribosso,* 120 Cal. App. 641 [8 Pac. (2d) 226], where the doctrine was not applied. In that case, the defendant, driver of an automobile, was proceeding southerly along a public street where he observed a minor child playing on the sidewalk on the opposite side; he saw him start running obliquely across the street toward a point in front of defendant's car. The car was travelling at 10 miles per hour. That case was submitted to a jury which held that the boy was guilty of contributory negligence and the defendant was excused from the application of the doctrine of last clear chance for the reason that he had passed the point on the course upon which the boy was travelling and he did not see and had no reason to anticipate that the child would continue on and run into the rear end of defendant's car. Ribosso, having driven past the point in line with the Richardson boy, had no reason to suspect that the child would continue without looking. But in the case of the plaintiff Johnson, Opstad had arrived at the intersection; he not only heard but actually saw Johnson's car travelling more than 500 feet at a speed ranging, according to his testimony, from 70 to 45 miles per hour. In the course of that travel, he saw it "all over the road" and in view of the fact that *it was driving* upon a paved boulevard at an ex-

cessive speed, it was a question of fact for the jury to determine whether Opstad *"knew"*, or *in the exercise of ordinary care should have appreciated* that Johnson was in a position of peril from which, for any reason, he could not extricate himself and whether Johnson was unaware of his peril and whether Opstad had a last cleàr chance to avoid injuring him.

To make it clear, then, it was for the jury to determine in the first place and for the trial judge on the new trial proceedings in the second place, whether when Johnson reached the intersection, he was able by the vigilant use of his powers to extricate himself to avoid injury and whether Opstad knew or had good reason to believe that Johnson was unconscious of his peril. The rule is stated in the case of *Wallis* v. *Southern Pac. Co., supra,* as follows: "In order to make the defendant liable, notwithstanding contributory negligence of the plaintiff, the defendant must not only be aware of the danger in time to avert it but must also know or have reason to believe that the plaintiff is oblivious of the danger and is in a position from which he cannot extricate himself". (See *Girdner* v. *Union Oil Co., supra.*)

The majority opinion, in arguing the technical rights of Opstad to proceed across Gold Queen Road because he arrived at the intersection ahead of plaintiff takes from the jury its prerogative of determining whether Johnson was unaware of his own peril and of determining whether Opstad perceived that Johnson was oblivious of his peril. This has the effect of taking from the plaintiff his right to have his case determined by a jury. Appellate courts must be on their guard not only to protect the substantive rights of litigants but they must be alert to protect the right of a litigant to have questions of fact determined by the jury if they have been properly submitted to a jury.

From the record in this case, the jury had the right to draw inferences that would support their verdict. "Where mandatory presumptions are not excluded, it is the right and duty of the jury to draw such reasonable inferences from the evidence as may appeal to and satisfy their minds". (*Thomas* v. *Visalia Elec. R. Co.,* 169 Cal. 658 [147 Pac. 972].) In the case of *Rovegno* v. *San Jose K. of C. Hall Assn.,* 108 Cal. App. 591 [291 Pac. 848], it is said: "In California infer-

ences in themselves constitute a recognized class of indirect evidence which a court or jury may not disregard. (Code Civ. Proc., secs. 1957, 1958.) Furthermore, 'upon a trial of a case the jury is to find not only the facts but also the inferences from them, if any may properly be drawn. . . . When an inference is supported by the evidence and is not opposed to human experience and reason, it cannot be disturbed by an appellate court' ".

In the case of *Hamilton* v. *Pacific Electric R. Co.*, 12 Cal. (2d) 598 [86 Pac. (2d) 829], the right of the plaintiff to recover depended upon whether or not the defendant had given reasonable inspection of its waiting room. The only evidence on the matter of inspection was by the plaintiff who testified that in the 20 or 30 minutes during which plaintiff was in the waiting room of the defendant "she did not observe" that any person either entered into or departed from the waiting room. In deciding that case, Mr. Justice Houser stated: "From a consideration of the foregoing, it would seem well established not only that plaintiff had sufficient evidence to sustain a judgment in her favor, but also that it was within the province and power of the trial court to draw therefrom the inference that the defendant had not performed its duty in giving a reasonable inspection to the premises in question. . . . It may be confidently declared that, founded upon the evidence, the jury not only is authorized to make any logical and reasonable deduction, but also that the jury is the exclusive judge of the weight and value of the inference that may be drawn from it; furthermore, as a corollary thereto, that any attempt on the part of an appellate court to draw an inference of fact constitutes 'a usurpation of the province of the trial court! The fact that some inference other than that which has been drawn by a jury may appear to an appellate tribunal to be the more reasonable affords no sufficient reason for disturbing the inference in question. It also appears to be well established that notwithstanding the fact that the evidence upon which the inference is founded is undisputed or without conflict, *an appellate court has not the power to draw an inference different from that which the jury has deduced. 'The question of negligence is one of fact for the jury and the finding of the jury cannot be overturned by this court where the evidence is conflicting or where, although the evidence is without con-*

flict, different inferences may reasonably be drawn from it.' (*Anderson* v. *Los Angeles Transfer Co.*, 170 Cal. 66, 67 [148 Pac. 212].) 'This court has frequently held that even though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the jury (or by the trial judge where the case is tried without a jury) and that the verdict of the jury or the finding of the trial judge thereon cannot be set aside by this court on the ground that it is not sustained by the evidence. . . . ' (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 426 [213 Pac. 42])''.

In the recent case of *Weiand* v. *Southern Pac. Co.*, 34 Cal. App. (2d) 500 [93 Pac. (2d) 1023], Weiand was killed when he was knocked off a step ladder on a freight car by a caboose "spotted" too close to the track on which his train was moving. The evidence of the accident was circumstantial. It was contended that there was no evidence that the negligence of defendant was the proximate cause of the accident. Commenting thereon, the court said: "Obviously, if plaintiff has failed to make out a case for the jury on either of two theories, no recovery can be had. *If, however, plaintiff has proved sufficient facts to justify a verdict upon one theory, the fact that there may be one or more other seemingly rational explanations of the episode in no manner precludes a recovery or invalidates the verdict. These are mere matters of argument to be presented to the jury*". Likewise, in the case of *Sherman* v. *Southern Pac. Co.*, 34 Cal. App. (2d) 490 [93 Pac. (2d) 812], Sherman was killed when he was thrown from the foot board of an engine upon which he was riding, due to an alleged defective cutting lever. The evidence was all circumstantial. The court said: "In this case, there is an uncertainty about the fact that the bracket holding the cutting lever gave way when decedent took hold of it and that he fell as a result. An inference that he fell when mounting the foot board was reasonably dispelled when it appeared in evidence from decedent's own statement just before he died that the lever broke "and that is why I fell. . . . " It was necessary to prove by substantial evidence that the appliance failed in the purpose for which it was designed. This substantial evidence might well be the reasonable inference drawn

from the implied findings of the jury of the proven facts which overcame any conjectural inference or mere guess.

"When no conflict in the evidence appears, but there may be a conflict as to the inference which may be drawn from such evidence, unless the inference that sustained the verdict was conjectural, appellate courts will not interfere. The test is: whether or not the inferences which may be drawn from the evidence to sustain the verdict are reasonable". (*Sherman* v. *Southern Pac. Co., supra.*) All conflicts must be resolved in favor of the respondent and all reasonable and legitimate inferences may be indulged to uphold the verdict, if possible. Where two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the jury· or the trial court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal. (2d) 427 [45 Pac. (2d) 183]; *Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157]; *Wing* v. *Kishi*, 92 Cal. App. 495 [268 Pac. 483].)

Application of the doctrine of the last clear chance in cases arising from the collision of motor cars should not be unduly restricted by judicial decision. Not only is this indicated by the language in the Wallis and Girdner cases, *supra,* but the appalling and unending parade of destruction of life and . property demands a liberal observance of the humanitarian doctrine. It is observed by the courts of more than twenty states of the Union, by the federal courts, and by those of Canada and of England. (45 Cor. Jur. 990.) It is more nearly consonant with the moral responsibilities cast upon those who are permitted to operate an enginery of destruction upon paved highways than is the commonly accepted concept of the California doctrine which arose in the days when the covered wagon collided with the locomotive. But within the purview of our own cited decisions, the facts of the instant case do not justify this court in defeating the verdict of a jury on questions of fact properly submitted to them. To do so is to reject the right of trial by jury upon a matter concerning which a jury is competent to try. Travelling at a slow rate of speed and having the ability to stop within a distance of a few feet, he had the only opportunity to avoid the collision. (*Bagwell* v. *Pacific Elec. Ry. Co.*, 90 Cal. App. 114 [265 Pac. 517].) He could have avoided the collision by a simple application of his brakes. This would

638

have been a much simpler process than his present defense. (*Cady* v. *Sanford*, 57 Cal. App. 218 [207 Pac. 45].)

The judgment should be affirmed.