[Civ. No. 14099.   Second Dist., Div. Two.   June 29, 1943.]

FRED M. KELLER, an Incompetent Person, etc., Appellant, v. ARDEN FARMS, INC. (a Corporation) et al., Respondents.

Frank H. Love and Frank E. Carleton for Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Respondents.

WOOD (W. J.), J.—Plaintiff commenced this action to recover for injuries which he suffered when his Lincoln Zephyr automobile collided with a milk truck owned by defendant Arden Farms Company and driven by defendant Lewis. Defendant Brant was "helper" on the truck for defendant Lewis. The jury returned a verdict in favor of defendants and from the resulting judgment plaintiff prosecutes this appeal.

It is conceded that plaintiff was guilty of negligence in the operation of his own automobile and that his negligence contributed to his injuries. Plaintiff contends, however, that defendants are liable under the doctrine of last clear chance. The trial court instructed the jury on the rules pertaining to this doctrine and it is now claimed that the instructions on this subject were prejudicially erroneous. Defendant, without conceding that the instructions were erroneous, contends that there was no justification for giving any instruction on the doctrine of last clear chance and that any errors that may be found in the instructions need not be given consideration.

The accident occurred at about 8 :00 a. m. in the morning of July 25, 1940, on a winding road 36 feet wide in Griffith Park in the city of Los Angeles. Defendant Lewis testified that he first observed plaintiff's approaching automobile when it was 300 yards distant at which time it was being operated on the wrong side of the road, rounding a curve. He observed plaintiff's car when it was about 100 yards distant, at which time it was on its own side of the road, where it continued up to a point about 50 feet away from the truck. It then suddenly and without warning swerved toward the center of the road and struck the side of the truck back of the cab. He testified that plaintiff's automobile was being driven at approximately 35 miles per hour and the truck approximately 20 miles per hour. When plaintiff's car started to swerve

toward the truck Lewis tried to pull over to the side of the road and at the same time applied his brakes, the truck being almost at a standstill at the time of the collision. Defendant Lewis further testified that he watched the course of the car and did not look at the driver; that he did not know until after the collision whether the driver of plaintiff's car was a man or a woman. Defendant Brant testified that he saw plaintiff's automobile when it was about 700 feet away, at which time it was on the wrong side of the road; that it travelled on the wrong side for about 100 feet and then went back to its own side of the road and continued on its own side of the road until it was approximately 50 feet from the truck, at which time it pulled over onto the truck. Defendant Brant further testified that he was looking at the car and did not observe the driver of the car.

Plaintiff relies upon the testimony of Gretsell McRae, the only other witness who saw the collision. She testified that she was driving her car about 75 feet behind defendants' truck and in the same direction as the truck. She was travelling down hill, waiting for a chance to pass the truck. She testified: ''I should judge the Zephyr loomed up under the tree about 200 feet when it started angling over toward the truck, coming ahead, over directly this way. I judge that was about 200 or 250 feet from where I was. I don't know how fast the Lincoln was going and have no opinion.'' She further testified that plaintiff was looking ''out over the golf course up to the time he plowed into the side of the truck . . . he was looking out of the opposite side of the car from where the steering wheel is.'' She further testified that ''the truck kept straight on, without changing its course, neither turning to the right nor left.''

■ The elements necessary to justify the court in instructing the jury on the doctrine of last clear chance are well stated in the frequently cited case of *Girdner* v. *Union Oil Co.*, 216 Cal. 197, 202 [13 P.2d 915]: ''That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situa-

tion, and has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.'' There must be substantial evidence before the court to establish all of these elements or the doctrine is not applicable.

Two theories have been suggested as justification for giving instructions on the last clear chance doctrine, both of which are mentioned in the Girdner case. One theory is that under the circumstances set forth in the rule the conduct of defendant becomes so ''wilful and wanton'' that he should be held liable. Under the other theory plaintiff's original negligence becomes remote and defendant's failure to avoid the accident becomes the proximate cause of the injury. Under either theory it cannot be held that the doctrine is applicable in the present case. Unquestionably it would be idle to argue that the truck driver's conduct was wanton. There is no substantial evidence to establish that the truck driver saw plaintiff in a position of peril at a time when he could avoid the injury by the exercise of ordinary care. The two defendants testified that although plaintiff had at some distance down the curving road travelled on the wrong side of the road, he had returned to the proper side of the road and continued thereon until he suddenly swerved onto the truck. They had not observed anything dangerous about the situation. It is true that Mrs. McRae testified that she saw plaintiff's car when it was at a distance of 125 to 175 feet from the truck and that plaintiff was then looking to one side and continued to look to one side, but the fact that this witness noticed the direction that plaintiff was looking does not furnish evidence that defendant Lewis was aware that defendant was not keeping his eyes upon the road. Most drivers observe the cars that are approaching from the opposite direction but do not pay particular attention to the drivers, who can generally be seen only through the windshields. Both defendants testified that they did not know that plaintiff was looking away from the road. There is nothing in the testimony of Mrs. McRae to contradict the statements of the two men who were on the truck that plaintiff returned to his own side of the road before making the swerve into the truck. Clearly, it cannot be held that the conduct of plaintiff became the remote cause and the conduct of defendant Lewis became the proximate cause of the collision. In *Johnson* v. *Southwestern Eng. Co.*, 41 Cal.App.

2d 623 [107 P.2d 417], the perilous predicament of the plaintiff was due to the fact that he had fallen asleep when he drove his truck into the intersection of two roads. It was held that the doctrine of last clear chance was inapplicable, since the defendant had not observed that the plaintiff had fallen asleep and therefore did not have knowledge of his perilous situation.

Since the evidence did not justify a verdict in favor of plaintiff under the doctrine of last clear chance, the court erred in giving any instructions to the jury on this subject. The errors in giving such instructions were not prejudicial.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied July 19, 1943, and appellant's petition for a hearing by the Supreme Court was denied August 26, 1943. Carter, J., voted for a hearing.