[Civ. No. 3183. Fourth Dist. Mar. 6, 1946.]

JAMES A. DALLEY, Respondent, v. ELMER CHARLES WILLIAMS, Appellant.

Harvey, Johnston, Baker & Palmer for Appellant.

West & Vizzard for Respondent.

GRIFFIN, J.—Defendant, cross-complainant and appellant Williams appeals from a judgment in favor of plaintiff, cross-defendant and respondent Dalley, after the jury awarded damages in the sum of $6,381.72.

The injury to plaintiff was the result of a collision between a motorcycle operated by plaintiff, a police officer, and a Dodge sedan operated by defendant, which accident occurred at the intersection of Sacramento and Pacific Streets in Bakersfield at about 7:30 a. m. on October 10, 1943. Sacramento Street is approximately 54 feet 6 inches wide and runs north and south. Pacific Street is 32 feet 6 inches wide and runs east and west. According to Williams' testimony, he was driving his car west on Pacific Street at a speed somewhere between 15 and 20 miles per hour and brought his car to an almost complete stop within a distance of 18 feet from the point of collision. This testimony is corroborated by the testimony of his wife and two other passengers in his car.

Plaintiff testified that Williams was driving his car at a speed of approximately 35 miles per hour and that he was operating his motorcycle south on Sacrament Street as ''Traffic Safety Officer for Schools''; that he was in pursuit of a

law violator who was speeding; that he accelerated his speed to overtake the speeder; that he was traveling in a residential area across a blind intersection at 35 miles per hour; that his view was obstructed so that on approaching the intersection where the collision occurred he could not see 100 feet down Pacific Street until he was 35 feet from the corner; that the Dodge was about 10 or 15 feet from the intersection when he first saw it traveling at about 35 miles per hour; that he did not sound his siren nor turn on his red light; that after he saw Williams he tried to slow down and turn out ahead of him west on Pacific Street; that Williams put on his brakes and tried to stop, and that he did not swerve his car prior to the impact; that the right front part of the Dodge struck the motorcycle on its left side about the center; that he was knocked in the air and finally stopped about 50 feet from the impact; that the motorcycle ended up at the southwest corner of the intersection; that he was in the hospital about three months from a compound fracture of the left leg and concussion of the brain, and lost a little over one year's time from his employment.

The Dodge car came to a stop near the southwest corner of the intersection and was damaged to the extent of $264.26. This was the basis of the cross-complaint.

Mrs. Williams testified that she looked to her right when her body was about 10 feet from the intersection and saw plaintiff about one-half block away from the intersection approaching at about 40 to 45 miles per hour; that she said nothing to her husband about what she saw then; that when plaintiff was about 40 feet from the intersection she could see that the motorcycle was going to hit them and that at that time she called Mr. Williams' attention to it; that the crash was almost simultaneous to her remark and that he applied the brakes and stopped the car; that Mrs. Dalley arrived on the scene and asked Mr. Dalley in her presence, what happened, and that he replied: "I wasn't looking." This statement was denied. There is evidence that the driver of the Dodge was approaching the intersection on the south half of Pacific Street just south of the hypothetical center line.

Defendant Williams testified that about 15 feet from the intersection he looked to his right; that from that point he could see approximately one-half block north on Sacramento Street; that there were shrubs and trees in the yard on the northeast corner of the intersection and that one would

have to be 15 to 20 feet from the intersection before he could see "into Sacramento Street"; that one could see north on Sacramento Street only through gaps in the trees; that Mr. Dalley could have been in that one-half block and still not be seen because of the trees and shrubs; that he did not see plaintiff; that after he looked to his right he then turned and looked to his left; that he saw plaintiff only "a second" before the accident happened, when his wife spoke up and said: "Look out"; that he was then about 18 feet in the intersection, near the center thereof, and that he then, for the first time, saw plaintiff about 35 feet north of Pacific Street traveling at about 35 miles per hour; that when he saw plaintiff he (defendant) was traveling about 15 miles per hour; that he applied his brakes and that his car traveled about 18 feet after the collision. He further stated that he had just gone around another car headed in the same direction and that was the reason he was traveling near the center of the street.

A witness, riding with defendant, testified that he did not see the officer until he was almost upon them, "possibly ten feet," and that they hit "almost simultaneously."

This is a resumé of the evidence bearing on the main question here presented which is that the trial court committed prejudicial error in the giving of an instruction based on the doctrine of last clear chance.

It is argued by defendant that from the evidence produced certain conditions precedent to the application of the doctrine of last clear chance were lacking, and he cites several authorities to the effect that it is reversible error for the court to instruct the jury on the doctrine of last clear chance under such circumstances.

The rule in *Wallis* v. *Southern Pacific Co.,* 184 Cal. 662 [195 P. 408, 15 A.L.R. 117], is cited to the effect that in order to make the defendant liable, notwithstanding the contributory negligence of the plaintiff, the defendant must not only be aware of the danger in time to avert it, but must also know, or have reason to believe, that the plaintiff is oblivious of the danger and is in a position where he cannot extricate himself from it. Negligence and the application of the doctrine of last clear chance are ordinarily questions for the determination of the jury. Where, however, there is no substantial evidence in the record to support a judgment which is founded thereon, it cannot be upheld, and charging the

432

jury upon that doctrine when there is no substantial evidence to support the theory is reversible error. (*Giovannoni* v. *Union Ice Co.*, 108 Cal.App. 190 [291 P. 461].)

In *Lasch* v. *Edgar*, 46 Cal.App.2d 726 [116 P.2d 949], *Herbert* v. *Southern Pacific Co.*, 121 Cal. 227 [53 P. 651], *Johnson* v. *Sacramento Northern Railway*, 54 Cal.App. 2d 528 [129 P.2d 503], and *Palmer* v. *Tschudy*, 191 Cal. 696 [218 P. 36], it was held that in order to invoke the last clear chance doctrine there must be evidence that the defendant saw or had knowledge of the fact that the plaintiff was in a situation of danger from which he could not escape by the exercise of ordinary care, and that the defendant was aware of his dangerous situation under such circumstances; that he realized plaintiff's inability to escape therefrom and that he *then* had a *clear chance* to avoid injuring him by the exercise of ordinary care and failed to do so. The doctrine presupposes time for effective action and is not applicable where the emergency is so sudden that there is no time to avoid the accident.

As to actual knowledge, the rule was stated in *Gillette* v. *City of San Francisco*, 58 Cal.App.2d 434 [136 P.2d 611], that it is a question of fact for the jury to determine from all the circumstances presented by the evidence whether the defendant actually knew of the plaintiff's peril, and that notwithstanding there may be a total absence of any positive testimony that the defendant actually knew of plaintiff's danger, and even though the defendant definitely denies seeing the plaintiff at all, the doctrine of the last clear chance may be invoked and applied where the facts and circumstances are such as would justify the jury in finding that despite the defendant's denial of knowledge or the absence of direct testimony on the subject, he was actually aware of plaintiff's danger in time to avert the accident; in other words, that he "must have known" of plaintiff's danger.

This holding was followed in *Paolini* v. *City and County of San Francisco*, 72 Cal.App.2d 579 [164 P.2d 916]. The authorities cited to us here are, in the main, referred to and fully elaborated upon in that decision and in *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915]. The only question here presented is whether or not there is substantial evidence, under the circumstances of this case, to bring it within the rule stated.

The cases invariably predicate the last clear chance doctrine

upon the proposition that the defendant actually knew that the plaintiff was in a position of danger.

Plaintiff argues that the evidence reveals that defendant Williams did have actual knowledge of the plaintiff's perilous position since defendant was traveling at a low rate of speed in the intersection and actually saw plaintiff in a perilous position of danger about 20 feet from him; that defendant was presumed to see what he was looking at and that after he looked at plaintiff he could see that he was turning his motorcycle to the west in order to avoid the accident, and that plaintiff could not escape from his perilous situation; that it may be reasonably inferred that if defendant saw plaintiff in a position of peril defendant had a clear opportunity to avoid the accident by swerving his car to the right side of the highway to avoid the accident; that the defendant failed to so exercise ordinary care and that therefore his negligent conduct was the proximate cause of the accident.

It is further argued, in this connection, that the jury might well conclude that Williams saw Dalley proceeding at a rapid rate of speed in the middle of the block and that plaintiff was unaware of the danger impending and was unable to escape therefrom through ordinary care; that in this connection defendant had ample opportunity to observe that plaintiff was a police officer and that another motor vehicle, which the officer was pursuing, was proceeding at an excessive rate of speed.

The doctrine of last clear chance presupposes that both parties were guilty of negligence; that there must be an opportunity, a *clear chance*, a situation established by substantial evidence, and that the defendant saw or knew of plaintiff's perilous position and could have avoided the collision but, having such opportunity, did not do so. (*Palmer* v. *Tschudy, supra*; *Erwin* v. *Morris,* 10 Cal.App.2d 168[51 P.2d 149].)

The question involved in this case is whether or not there is substantial evidence in the record upon which the jury could have based a finding that defendant Williams saw or knew of plaintiff's perilous position immediately before the accident in time to have a clear chance to avoid it by exercising ordinary care. We are convinced that the facts in the instant case are so different from the facts in the cases relied upon by plaintiff that those cases cannot be here considered as a complete guide.

In *Paolini* v. *City and County of San Francisco, supra*,

upon which plaintiff so strongly relies, the operator of the streetcar admitted seeing the truck, on the running board of which plaintiff was standing with his back to the streetcar when the streetcar was about 200 feet from the point of impact, but denied seeing plaintiff until the streetcar was almost upon him. Plaintiff's position on the running board of the truck on which he was standing was in *clear view* of the motorman. Under these facts it was held that the jury might infer that the motorman saw plaintiff and knew that he was not aware of his peril.

In *Handley* v. *Lombardi*, 122 Cal.App. 22 [9 P.2d 867], the rule was held to be applicable. That was a case where a truck was proceeding slowly across an intersection. The defendant was seated at the wheel of his automobile which was approaching from the right of the truck and was driving at a high rate of speed and looking straight ahead. He ran into the right rear wheel of the truck. *There was no obstruction to his view.* The driver of the truck was helpless to avoid the collision, and during a period of time immediately preceding the accident it was possible for the defendant to have avoided it either by applying his brakes or by swerving to his left behind the truck.

Here, it is apparent that neither party had a clear, unobstructed view as they approached the intersection, due to shrubbery and intermittent trees growing at the northeast corner thereof. Photographs in evidence corroborate this observation. Plaintiff himself testified that it was a "blind intersection" and that his view was obstructed so he could not see 100 feet down Pacific Street when he was 35 feet from the corner. The same condition must have confronted defendant. Defendant testified that he did not see plaintiff nor have any knowledge of his whereabouts until he (defendant) was 18 feet in the intersection when Mrs. Williams called his attention to the situation, and that at that time plaintiff was 35 feet north of Pacific Street traveling at 35 miles an hour. It is argued that by reason of the fact that Mrs. Williams testified that she could see through the trees and observe plaintiff approaching about one-half block from the intersection traveling at 40 to 45 miles an hour, that the jury therefore had the right to conclude that Mr. Williams looked at the same time and saw the same thing. We do not believe this to be the true test. The jury must not only conclude, from substantial evidence, that defendant did

see plaintiff, but must, in addition thereto, conclude that plaintiff was negligent, and as a result thereof was in a position of danger from which he could not escape by the exercise of ordinary care. Clearly, Mrs. Williams did not realize all of these conditions when she first saw plaintiff. It is inescapable that it was not until she screamed that she so realized these elements essential to the application of the rule. It is logical to believe that it was at that time that defendant first saw plaintiff and learned of the true situation with which he was presented.

■ The last clear chance doctrine was not applicable until plaintiff arrived at such a point as to be in peril, and this was the point where he could no longer escape injury by exercising ordinary care. (*Young* v. *Southern Pacific Co.*, 182 Cal. 369, 380 [190 P. 36]; *Haber* v. *Pacific Electric Ry. Co.*, 78 Cal.App. 617, 633 [248 P. 741].) In *Cady* v. *Sanford*, 57 Cal.App. 218, 224 [207 P. 45], it was said:

"At some appreciable time prior to the crash plaintiff was in a position of peril. He was in a position of peril at the very instant that he arrived at that point where he no longer could avoid an accident by exercising ordinary care. Then, and not until then, was the last clear chance doctrine applicable."

It has been likewise held that the term "place of safety" ordinarily includes the position of the plaintiff while he is merely *approaching* the place of danger, and so long as he is only *approaching* but is not actually *in* a position of danger, the plaintiff cannot invoke the doctrine. (*Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31 [76 P. 719, 101 Am.St.Rep. 68]; *McHugh* v. *Market St. Ry. Co.*, 29 Cal.App.2d 737 [85 P.2d 467]; *Dull* v. *Atchison, T. & S. F. Ry. Co.*, 27 Cal.App. 2d 473 [81 P.2d 158].) ■ While a person may be in danger or peril, i. e., while he may be simply exposed to injury, that is not enough to constitute a position of danger within the meaning of the last clear chance doctrine, and in order to comply with the requirements of this element of the doctrine, his position of danger must not only be an exposure to injury but it must be one from which he cannot extricate himself by exercising ordinary care. (*Sadler* v. *Benson*, 109 Cal.App. 405 [293 P. 126]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36, 43 [297 P. 884]; *Cady* v. *Sanford*, 57 Cal.App. 218 [207 P. 45].) ■ The fact that a defendant actually sees the plaintiff some considerable time before

the accident, or at a time when either or both of them are a considerable distance away from the place of the accident does not necessarily make the doctrine applicable. (*Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748 [134 P. 709]; *Smith* v. *Aggola,* 27 Cal.App.2d 750 [81 P.2d 997].) It has been held, in a certain class of cases, that if a defendant, while still a considerable distance away from the accident, sees the plaintiff approaching the place of danger, he has a right to assume, until the circumstances apprise him to the contrary, that the plaintiff will stop before reaching the place of danger. (*Green* v. *Los Angeles etc. Ry. Co., supra*; *Thompson* v. *Los Angeles etc. Ry. Co., supra,* p. 755; *Ellerman* v. *Pacific Elec. Ry. Co.,* 7 Cal.App.2d 385, 388 [47 P.2d 521]; *McHugh* v. *Market St. Ry. Co., supra,* p. 743.)

There is no evidence that defendant could have stopped his vehicle in the distance traversed between the time he first saw the plaintiff and the time of the impact. Swerving to the left or right would not have avoided the collision. Plaintiff's motorcycle struck the Dodge on the right front fender. Both parties were continuously moving toward the point of impact. Defendant cannot be held liable under the last clear chance rule, upon the theory that he would have discovered the peril but for remissness on his part. (*New York Lub. Oil Co.* v. *United Railroads,* 191 Cal. 96 [215 P. 72], quoted in *Mangler* v. *Pacific Electric Ry. Co., supra.*)

In *Bagwill* v. *Pacific Electric Ry. Co.,* 90 Cal.App. 114, page 121 [265 P. 517], it is said:

"Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. There seems still to be some misconception of this doctrine of last clear chance. It was not devised as a last resort to fasten liability on defendants. Like the body of the law of negligence, to which the doctrine is appended, the test remains as that of ordinary care under all of the circumstances. The law in many of its workings indicates great charity and solicitude for individual rights. It says to a negligent plaintiff that in spite of his lack of caution he will be protected against wanton, wilful or avoidable harm. But, on the other hand, it penalizes no innocent person. We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation something can be constructed upon which may be fastened the claim of last clear chance.

The words mean exactly as they indicate, namely, last *clear* chance, not possible chance. The supreme court has not left us to speculate on the application of the doctrine.''

 We must therefore conclude that there was no substantial evidence which would justify the trial court in instructing the jury on the last clear chance doctrine.

 The giving of an instruction submitting an issue on the last clear chance doctrine, where there is not sufficient evidence to justify the submission, is reversible error. (*Wallis* v. *Southern Pacific Co., supra*; *Johnson* v. *Southwestern Engineering Co.*, 41 Cal.App.2d 623 [107 P.2d 417]; *Erwin* v. *Morris, supra*; *Giovannoni* v. *Union Ice Co., supra*.)

 Plaintiff next argues that the giving of the instruction, if erroneous, was only ''technical in nature,'' not prejudicial, and that the sole proximate cause of the accident was the negligence of defendant. With this we cannot agree. The instruction may have governed the jury in arriving at a verdict for the plaintiff, and, in the absence of evidence to support it, may have been prejudicial. The jury, under the evidence, might well have found the plaintiff guilty of contributory negligence contributing proximately to his own injury. (*Wallis* v. *Southern Pacific Co., supra*.)

Judgment reversed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied March 28, 1946, and respondent's petition for a hearing by the Supreme Court was denied April 29, 1946. Carter, J., voted for a hearing.