[Civ. No. 15534. Second Dist., Div. Two. July 1, 1947.]

GLEN A. FOLGER, Respondent, v. RICHFIELD OIL
CORPORATION (a Corporation) et al., Appellants.

Kenneth Sperry for Respondent.

James V. Brewer for Appellants.

MOORE, P. J.—The question for decision is whether the court erred in granting plaintiff's motion for a new trial by reason of its failure to instruct the jury with respect to the doctrine of the last clear chance.

The complaint alleged that while plaintiff was proceeding in his sedan northward on Cherry Avenue in Long Beach at 9:14 p. m. on December 17, 1944, defendants so negligently operated their 2-ton flat-bed truck as to cause it to collide with plaintiff's car at the intersection of Wardlow Road, and that as a proximate result of such negligence plaintiff's automobile was destroyed and he suffered severe personal injuries to his damage. The negligence and damage were denied and pleas of unavoidable accident, contributory negligence, and plaintiff's intoxication were alleged. After a jury had rejected his demands plaintiff moved for a new trial. It was granted "on the ground of error in law in that the court failed to give plaintiff's requested instruction with reference to the doctrine of the last clear chance." From such order comes this appeal. That the order is erroneous will presently appear.

Immediately prior to the collision plaintiff and Ann Provencher, his fiancée who subsequently became Mrs. Folger, proceeded northward on Cherry Avenue in separate automobiles. By arrangement he led the way to assure her safety through the fog. He kept her within his vision by watching her headlights through his rearview mirror. If they disappeared he slowed down until she came near. Having proceeded north on Cherry Avenue they arrived at Wardlow Road which extends east and west. Plaintiff was familiar with the intersection from his long residence in that vicinity. He testified that by reason of the fog he could see the headlights of passing cars at no greater distance than 75 feet and he was guided solely by the white stripe in the center of the avenue along which he proceeded to travel at about the same speed until he collided with the truck. In the center of Cherry is a concrete island which extends south from the south line of Wardlow Road, a distance of about 75 feet. At the south end of the island amber blinker lights flicker in the darkness as an aid to the motorist. Plaintiff observed them when 50 feet away, swerved as a signal to Miss Provencher but returned to the white stripe. At the center of Wardlow Road his sedan struck the rear 2 feet of the truck which had almost completed a left turn from its westerly course into Cherry Avenue. So violent was the collision that it destroyed the front end of the sedan, while the rear end of the truck was knocked about 6 feet, the two men in the driver's cab were jostled, and their 6,000 pounds of tools were

scattered on the avenue. Immediately prior to the collision plaintiff did not swerve or apply his brakes.

Defendant Raines was driver of the truck. He and his companion, foreman Hahn, both testified that they could see headlights about one thousand feet distant. They were enclosed in the cab but the windshield wiper was in action. The headlights, the tail lights and two clearance lights were lighted. A street light over the intersection illuminated the area. When he arrived at Cherry Avenue Raines stopped long enough to allow several automobiles to pass, going in both directions. Having seen the lights of plaintiff's sedan over 400 feet to the south on the avenue he started in compound low and arrived at the center going at a speed of from 3 to 5 miles an hour. He had almost completed the turn when he observed the sedan about 200 feet away and not until then did he realize its speed which he estimated to be about 50 miles an hour. In order to avoid the truck's being hit Raines increased his speed to 5 to 7 miles an hour which was its limit in compound low. He had driven trucks for many years. Because the truck was new he feared that by shifting gears he might kill the motor. There was no other traffic to interfere with plaintiff's swerving from the white stripe. In view of such facts would the trial court have been justified in giving the instruction on the last clear chance?

No criticism is made of the contents of the instruction proposed. It contains the six elements essential to its correctness. But the doctrine applies only when the evidence shows (1) that the plaintiff by his own negligence has placed himself in a position of peril from which he cannot escape or of which he is obviously unconscious; (2) that the defendant saw or knew the danger which beset the plaintiff, or knew facts from which a reasonable person would believe the plaintiff to be in peril; and (3) that while able, by the use of ordinary care to avoid injuring the plaintiff in his perilous position, defendant fails to use such care and injures plaintiff. (*Girdner* v. *Union Oil Co.*, 216 Cal. 197, 202 [13 P.2d 915]; *Palmer* v. *Tschudy*, 191 Cal. 696, 700 [218 P. 36]; *Darling* v. *Pacific Electric Railway Co.*, 197 Cal. 702, 707 [242 P. 703]; *Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223, 226 [28 P.2d 932].) In exceptional circumstances only is the doctrine applicable to an action arising from a collision of two moving vehicles. This is especially true in a case in which the injured party, as in the

instant action, drove rapidly, for the reason that the act which under such conditions created the peril must of necessity have occurred practically simultaneously with the collision. As a result of such occurrence at about the time of defendant's discovery of plaintiff's peril it cannot be said that the defendant had a last clear chance to avoid the accident after discovering the plaintiff's peril. (*Johnson* v. *Sacramento Northern Railway*, 54 Cal.App.2d 528, 532 [129 P.2d 503]; *Poncino* v. *Reid-Murdock & Co., supra.*)

██ If each of them could have avoided the collision the doctrine would not apply. (*Palmer* v. *Tschudy, supra.*) Clearly, plaintiff could have avoided it by stopping his sedan or by veering to the right or by timing his movement so as to allow the truck to escape. But continuing as he did up to the instant of the injury he cannot establish the liability of defendants. Conceding defendants' negligence, *arguendo*, the doctrine "has no application to a situation where by their mutual carelessness an injury ensues to one of two parties, both of whom are contemporaneously and actively in fault down to the very moment of injury." (*Palmer* v. *Tschudy*, p. 701; *Young* v. *Southern Pacific Co.*, 189 Cal. 746, 755 [210 P. 259].) ██ If a plaintiff cannot recover when both parties by the exercise of ordinary care could have avoided the accident, then surely he cannot recover when his own sole negligence in driving rapidly upon a boulevard of much vehicular traffic in the foggy blackness continued to the moment of impact with the truck which was in such a position that a collision could have been avoided by his exercise of ordinary care. (*McHugh* v. *Market Street Railway Co.*, 29 Cal.App.2d 737 [85 P.2d 467].) He was conscious of the intersection of which he had noticed by the orange blinker lights 90 feet south of the point of collision. By reducing his speed to conform with the lack of visibility or by veering 3 feet when the truck hove into view he could have avoided the crash. ██ In order for him to invoke the application of the doctrine of last clear chance he must have been so entrapped that by no reasonable effort could he save himself. (*Sadler* v. *Benson*, 109 Cal.App. 405, 407 [293 P. 126].) ██ Also, the evidence must show that after the truck driver discovered plaintiff's peril he had sufficient time to avoid the collision by the exercise of ordinary care. (*Pearce* v. *Elbe*, 98 Cal.App. 101, 104 [276 P. 389].) ██ A motorist on the highway is presumed to be in possession of normal faculties and to have seen that which was within the range of his

vision, and the driver of another vehicle has the right to presume that such motorist will perform the duties imposed by law and by the desire for self-protection. (*Rasmussen* v. *Fresno Traction Co.*, 138 Cal.App. 540, 546 [32 P.2d 1091].)

■ The evidence in the instant action clearly shows that plaintiff was continuously negligent for some 500 feet prior to his striking the truck. Disregarding his excessive speed, asserted by Raines and Hahn, the damage to his sedan and to himself indicates a dangerous rate of movement for a motorist in a foggy night on a much-traveled boulevard. In approaching the intersection he did not slacken his speed or look out for other cars but continued anxiously to watch his rearview mirror and to think only of the welfare of Miss Provencher. He argues that he was unable "to see directly ahead with his headlights on because of the blinding effect of the refracted rays from the headlights which shine back in his eyes," and that the driver of the truck was conscious of such effect of the headlights. But how could that gentleman have known that plaintiff did not see the 22-foot truck, or that he would continue at the same speed on entering the intersection, or that he would continue to hug the center stripe? Raines knew that the light above the intersection illuminated the street and that all his lights were burning as he moved into Cherry Avenue at a slow speed when plaintiff's headlights were 400 or 500 feet to the south. But he did not know (1) that plaintiff was watching the avenue in the rear of his sedan; (2) that he was either ignorant of or could not see the intersection; (3) that he could not see the courtesy lights or the bulk of the truck 40 feet away, or that he could not stop his sedan within that distance; (4) that he would not veer to the right to avoid a crash when the road was clear of traffic. Raines gave Officer Haynes at the scene of the accident substantially the same report as that given in his testimony, and the officer testified that the courtesy lights could be seen in the fog at a distance of from 40 to 60 or 75 feet. A fireman testified that the street light was visible from his station 200 feet from the intersection. Plaintiff knew the avenue and the intersection well and that they were much traveled. He had made a special effort to locate the island in order to guide Miss Provencher to the right of it.

If he could see the blinker lights 50 feet ahead, if by the exercise of ordinary care he could have seen the truck's courtesy lights at a distance of "from 40 to 60 or 75 feet," and

if its headlights were bright and the street light was visible 200 feet, there was no reason why the truck driver should not have relied upon plaintiff's stopping his sedan in time or upon his bearing to the right upon the open easterly side of the 82-foot avenue. Certainly he would have done so but for the attention he was paying to the safety of the young lady who was his chief concern—of which fact defendant Raines was wholly ignorant. And if he was traveling at 20 miles an hour as he testified, one glance at his mirror consumed the time within which he traveled 30 feet while he could in the same time have brought his car to a standstill and thereby have extricated himself from danger.

In view of the situation presented by the proof the doctrine of the last clear chance was not available to plaintiff. (*Wallis* v. *Southern Pacific Co.,* 184 Cal. 662, 673 [195 P. 408, 15 A.L.R. 117]; *Johnson* v. *Southwestern Engineering Co.,* 41 Cal.App.2d 623, 627 [107 P.2d 417]; *Lasch* v. *Edgar,* 46 Cal.App.2d 726, 728 [116 P.2d 949].) Until the moment of the impact defendant Raines properly relied upon plaintiff's continuing duty to observe the presence of the truck and not to collide with it. Also, in the exercise of reasonable care he might presume that plaintiff would not continue his approach until he arrived at the truck, since it is obvious that plaintiff could with the least care have avoided the impact. (*Young* v. *Southern Pacific Co.,* 182 Cal. 369, 380 [190 P. 36]; *Behne* v. *Pacific Electric Railway Co.,* 30 Cal.App.2d 437, 442 [86 P.2d 843]; *McHugh* v. *Market Street Railway Co., supra; Korchak* v. *Pacific Electric Railway Co.,* 9 Cal.App.2d 89, 93 [48 P.2d 752]; *Thompson* v. *Los Angeles & San Diego Beach Railway Co.,* 165 Cal. 748 [134 P. 709]; *Haber* v. *Pacific Electric Railway Co.,* 78 Cal.App. 617 [248 P. 741]; *Sichterman* v. *R. M. Hollingshead Co.,* 94 Cal.App. 486 [271 P. 372, 1111].) Nothing in the circumstances surrounding the accident would have indicated to a reasonably prudent man that plaintiff would drive directly into the truck with undiminished speed or that he was in any danger if he exercised ordinary care. The defendants were therefore not responsible for plaintiff's safety. (*Richardson* v. *Ribosso,* 120 Cal.App. 641, 643 [8 P.2d 226]; *Sichterman* v. *R. M. Hollingshead Co.,* 491.)

The contention of plaintiff is that the truck was moving so slowly that its courtesy lights could have been mistaken for the amber light on the north side of Wardlow Road; that both Raines and Hahn observed that the sedan while still 200 feet south was coming at such a dangerous speed that it would

probably strike the rear end of the truck; that the sedan appeared to Raines to be following the white stripe and did not slacken its speed within the last 200 feet; that by reason of these facts the truck driver knew, or by the exercise of ordinary care should have known, that plaintiff was in a position of peril; that he was totally unaware thereof; that Raines had sufficient time to avoid the accident by merely sounding his horn. He supports his contention with the statement that Raines admitted that he was of the belief that plaintiff's sedan would probably collide with the rear end of the truck while plaintiff was still 200 feet south and by the common knowledge that a person driving in a dense fog is unable to see unlighted objects on the road ahead; that such drivers frequently steer their courses by watching the center white stripe. In support of such contention plaintiff cites *Gillette* v. *City of San Francisco,* 58 Cal.App.2d 434 [136 P.2d 611]; *Girdner* v. *Union Oil Co.,* 216 Cal. 197 [13 P.2d 915]; *Paolini* v. *City and County of San Francisco,* 72 Cal.App.2d 579, 584, 587 [164 P.2d 916]; *Jones* v. *Yuma Motor Freight Terminal Co.,* 45 Cal.App.2d 497 [114 P.2d 438]. In view of the facts heretofore recited such authorities are not applicable. If plaintiff did not in fact see the courtesy lights, by the exercise of reasonable care he could have seen them while 50 feet away, and traveling at 20 miles an hour he could have avoided the collision. In the exercise of ordinary care the truck driver was not required to expect that plaintiff would sleep from the time he saw the blinker lights on the island or otherwise fail to observe that the truck was already in the highway.

Plaintiff especially emphasizes as decisive of this appeal *Gillette* v. *City of San Francisco, supra,* and *Girdner* v. *Union Oil Co., supra.* Neither case lends any support to his argument. In the case of Gillette he was standing in a position of danger with his back toward the approaching street car, unaware of his peril and in plain view of the motorman. From such facts it was a fair inference that the motorman must have seen that Gillette was not conscious of his danger and could have avoided striking him by simply sounding his bell or stopping his car. His negligence in failing to do either was the proximate cause of the accident, making applicable the rule of the last clear chance. In the case of Mr. Girdner, he was in a touring car enclosed with side curtains. He had just passed over a Southern Pacific track and upon entering the highway was driving at about 12 miles an hour. Having

seen no traffic coming from the north he looked to the south, and while so looking the truck traveling south at a speed of 20 miles an hour and without the driver's giving any warning of its approach struck the touring car and shoved it about 15 or 20 feet. The truck could have been stopped within 20 feet. Its driver saw that Girdner was unconscious of his peril; that he could not escape from it by the exercise of ordinary care; that by the exercise of ordinary care it would have appeared to the truck driver that Girdner was unconscious of the impending danger and was unable to escape through the exercise of ordinary care; that after making such observations the driver had a clear opportunity to avoid striking Girdner by the exercise of ordinary care and did not avail himself of such opportunity but negligently proceeded to run down the touring car. While the Girdner and Gillette cases and others hold a motorist to a stricter accountability when it is clear that he was in a position to avoid the accident there is nothing in any of the cases cited which suggests the liability of the driver of a truck which is struck on its side by the driver of another car whose driver has brought on the accident by recklessly proceeding at excessive speed on a popular highway on a foggy night, when by the exercise of reasonable care he could have observed the truck and have avoided a collision.

■ Plaintiff contends that defendant Raines could have cleared the intersection more quickly had he started out in second gear; that he started in compound low and continued without shifting to low or intermediate until the collision; that he was thus negligent in failing to act when confronted with the last clear chance. This is not a sufficient answer to his own continuing negligence. Raines knew that by proceeding in any higher gear up the incline on the avenue he would incur more likelihood of killing his motor. It was his duty to exercise his own judgment as he proceeded, and not to act as he might have conceived another would act.

■ Plaintiff contends that other errors were committed to his prejudice and that by reason thereof the order should be affirmed. After proving by Raines that he started to make the turn into the avenue in compound low gear, he called the witness Beseau, an experienced truck driver, and by questions offered to show by him that the proper practice in driving a truck with compound low gear is to start in ordinary low when on level ground and that it is improper to use compound low except when the truck is heavily loaded or is

started on an incline. The testimony was rejected on the ground that it was not material. The witness had never driven a truck of the same capacity as that here involved with the compound low gear. Proper practice in driving one size or type of truck would not necessarily be proper practice in operating a different size or type. Furthermore, while the question assumed starting on level ground, the evidence was that Raines was heading for an upgrade as he crossed the center.

██ Error is assigned by reason of the court's refusal to give plaintiff's proposed instructions A, B, C, F, G and H. Requested instruction A defined contributory negligence as consisting of two elements, namely (1) plaintiff's negligence and (2) that it must have contributed as a proximate cause to his injuries. His requested instruction B places the burden of proving plaintiff's contributory negligence upon defendants and declares that a person who himself is exercising ordinary care has a right to assume that others will do likewise. Both of such instructions had been properly covered by the court's general charge taken in the main from "California Jury Instructions Civil."* His requested instruction C was with reference to the duty of a motorist approaching a through highway to stop and yield to one approaching so closely as to constitute an immediate hazard. This was likewise covered by the court's reading sections 552 and 577, Vehicle Code, and at the same time the jury was instructed that a violation of section 552 is negligence and that one who is exercising ordinary care may assume that others will do likewise and may act upon that assumption. (Baji, 138.) Requested instruction F was also covered by the court's reading section 577. Requested instruction G was given. Inasmuch as no argument is presented against requested instruction H it is assumed that the assignment with reference to it is abandoned.

██ Contention is made that the instruction given on the subject of imminent peril was error. Appellant bases his argument upon the assumption that the truck driver "was guilty of conduct clearly amounting to negligence." The instruction is Baji, 137, and it applied to the situation presented by the evidence. If Raines was negligent, as contended by respondent, the instruction could have done no harm, for it begins with these words: "A person who, without negligence on his part, is suddenly confronted with peril."

*These forms are approved. The volume is commonly referred to as Baji.

■ Finally, it is claimed that defendants have failed to demonstrate that the order on appeal was erroneously made, citing 2 California Jurisprudence 905 to the effect that the granting of a new trial rests largely in the discretion of the trial court and is not to be disturbed except upon showing of a manifest and unmistakable abuse. As certain as is the rule that the burden of convincing the reviewing court that such an order is error rests upon the appellant is the fact that in this action it has been successfully demonstrated that the court improperly made the order. It is not only consonant with the traditional doctrine that litigation must have an ending, but unless prejudicial error appears clearly to have been committed by the trial judge it is conducive to the public welfare that controversies once fairly tried should be heard no more.

The order is reversed.

McComb, J., and Wilson, J., concurred.