[Civ. No. 4394. Fourth Dist. March 17, 1953.]

EDWARD MEHLING et al., Respondents, v. DAVID
ZIGMAN et al., Appellants.

James M. Thuesen and John D. Chinello for Appellants.

Crowe, Mitchell & Hurlbutt and Hansen & Barstow for Respondents.

MUSSELL, J.—This action arises out of a collision which occurred when a Buick automobile owned by defendant and appellant Morris Carter, and being operated by defendant and appellant David Zigman, was driven into a tractor and two large van type trailers which had "jackknifed" and were stopped on a public highway near Dinuba. The tractor and trailers were owned by plaintiff Valley Motor Lines, Inc., a corporation, and were being operated by plaintiff Edward Mehling.

In the complaint filed herein plaintiff Mehling sought damages for personal injuries and plaintiff Valley Motor Lines claimed damages for repairs to its equipment and for loss of use thereof. The defendants filed a cross-complaint in which David Zigman sought damages for personal injuries sustained as a result of the collision and Morris Carter sought damages for the destruction of his automobile. A jury trial was had which resulted in a verdict that plaintiffs take nothing by their complaint and that cross-complainants take nothing by their cross-complaint. Cross-complainants appeal from the judgment entered against them on the cross-complaint and base their appeal on the grounds (1) that the court erred in refusing to give an instruction to the jury on the doctrine of last clear chance; and (2) in giving an instruction in the language of section 502 of the Vehicle Code.

The collision occurred at about 7 o'clock p.m. on October 5, 1950, near the city of Dinuba, on El Monte Way, an east-

west paved highway, divided by a white center line into east-bound and westbound traffic lanes, each 10 feet wide. There was an oil shoulder 1½ feet wide on the south side of the paved portion of the highway. On the night of the accident Edward Mehling was driving a tractor and two van type trailers in a westerly direction on El Monte Way for his employer, Valley Motor Lines, Inc. Each of said vans was 20 feet in length, 8 feet in width and about 12½ feet in height. Shortly prior to the collision, a car was driven out onto the highway in front of this equipment. Mehling swerved to the left to pass this car and then observed the lights of an automobile coming from the west. He then turned back into the north traffic lane, behind the car which was being driven westward. In this operation, the tractor and trailers "jack-knifed" and when they were brought to a stop, the tractor, headed south, was across the westbound traffic lane, with its front wheels on the white center line. There then was sufficient clearance for westbound traffic around the front end of the tractor. The first van, headed southwest, was off the roadway and the second van was approximately 9 feet north of the north edge thereof. The tractor motor was running and the two vans and tractor were still attached together. After his equipment was brought to a stop, Mehling did not attempt to move it for 10 or 15 seconds. He opened the door, put one foot on the running board of his tractor, and looked back to determine that the clearance lights and taillights on his equipment were still burning. Mehling testified that he then got behind the wheel of the tractor and was endeavoring to get his equipment in gear when he saw the glare of the headlights of the Buick automobile driven by Zigman approaching from the east; that the Buick was then about 900 feet away; that when it was about 400 feet distant, he formed the opinion that it was traveling at a speed of 80 miles per hour; that the Buick did not decrease its speed; that he did not put out any flares because "it was faster getting the equipment off the road than it was putting out the flares."

There is evidence in the record from which a jury could infer that the tractor and trailers remained in a position in which they were stopped for a period of one to five minutes before the accident happened. The uncontradicted evidence shows that during the last 1,000 feet of Zigman's approach to the point of impact there were no other vehicles approaching him from the west.

Appellant Zigman testified that he drove the Buick in the

westbound traffic lane at a speed between 50 and 60 miles per hour; that he was driving a new automobile; that the lights on it were good and that he had them on "high beam"; that he did not see the persons who were at the side of the road several hundred feet east of the standing tractor "trying to flag him down"; that he did not see the equipment blocking the westbound traffic lane and was unaware of its existence; that he saw no lights on the equipment or any part of it; that he did not decrease his speed, and did not apply his brakes at any time; that he was "right on top of this object" before he knew of its existence or nature and that he may or may not have swerved his automobile to the left a moment before the impact.

The elements of the last clear chance rule are:

"(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation, and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure." (*Selinsky* v. *Olsen,* 38 Cal.2d 102, 104 [237 P.2d 645] ; *Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 293 [246 P.2d 663].)

All of the elements necessary for the application of the rule must be present or the doctrine is inapplicable. If any one of them be absent, the rule does not apply and the case is governed by the ordinary rules of negligence and contributory negligence. (*Palmer* v. *Tschudy,* 191 Cal. 696, 700 [218 P. 36] ; *Ralston* v. *Hewitson,* 82 Cal.App.2d 143, 144 [185 P.2d 644].)

There is no question but that the appellant Zigman by his own negligence got himself in a position of danger. He arrived at that position when he reached the point at which he could no longer stop or slow down sufficiently to avoid the collision or pass to the left around plaintiffs' tractor. (*Rodabaugh* v. *Tekus, supra,* 304.) Since Zigman was traveling, according to his own testimony, between 50 and 60 miles per hour with a new automobile equipped with good lights on

high beam, it is apparent that his position of danger was attained within a very short distance of the tractor and trailers. Obviously, plaintiff Mehling then did not have a last clear chance to avoid the accident which occurred within a few seconds. As was said in *Rodabaugh* v. *Tekus, supra*, 305 and 306, quoting from *Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223 [28 P.2d 932] :

"Like many other cases involving collisions between moving vehicles, the accident may be said to have happened within the twinkling of an eye after the first indication of danger. While the doctrine of last clear chance has been applied in certain exceptional cases involving collisions between moving vehicles, we are of the opinion that it should not be applied to the ordinary case in which the act creating the peril occurs practically simultaneously with the happening of the accident and in which neither party can fairly be said to have had a *last clear chance* thereafter to avoid the consequences. To apply the doctrine to such cases would be equivalent to denying the existence of the general rule which makes contributory negligence a bar to recovery.

"In other words, it is not enough to relieve a plaintiff of his own negligence that the defendant may have had a *chance* to avoid the accident, but defendant must have had the *last chance* and also had a *clear chance* to do so by the exercise of *ordinary* care. That he should have had the *last chance* implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person. That he should have had a *clear chance* implies that he must have had more than a *bare possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party."

There is no evidence that plaintiff Mehling had any actual knowledge of the perilous position of Zigman in time to have backed his equipment off the roadway. When he first saw the lights of the Buick 900 feet away, Mehling had the right to assume that Zigman possessed normal faculties; that he saw the tractor and trailers and would slow down to pass to the left around the tractor.

 We conclude there was no substantial evidence to sustain the application of the last clear chance doctrine as to plaintiff Mehling and that the trial court did not err in refusing to instruct the jury on the subject. (*Ralston* v. *Hewit-*

*son, supra; Rather* v. *City & County of San Francisco,* 81 Cal. App.2d 625, 630 [184 P.2d 727]; *Dalley* v. *Williams,* 73 Cal. App.2d 427, 437 [166 P.2d 595]; *Erwin* v. *Morris,* 10 Cal.App. 2d 168, 171 [51 P.2d 149]; *Johnson* v. *Southwestern Eng. Co.,* 41 Cal.App.2d 623, 626 [107 P.2d 417]; *Folger* v. *Richfield Oil Corp.,* 80 Cal.App.2d 655, 662 [182 P.2d 337].)

■ Appellants contend that it was prejudicial error to instruct the jury as follows:

"You are instructed that Section 502 of the Vehicle Code of California, in effect at the time of the accident involved in this case, provides in part as follows:

" 'It is unlawful for any person who is under the influence of intoxicating liquor to drive a vehicle upon any highway.'

"The violation of said section of the Vehicle Code of California constitutes negligence as a matter of law."

In support of this contention appellants cite two cases: *Stickel* v. *San Diego Elec. Ry. Co.,* 32 Cal.2d 157 [195 P.2d 416] and *Tossman* v. *Newman,* 37 Cal.2d 522 [233 P.2d 1]. In the Stickel case the defendants offered an instruction setting forth the provisions of sections 501 and 502 of the Vehicle Code. Section 501 contained, in part, the following language:

"Any person who, while under the influence of intoxicating liquor, drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury to any person, is guilty of a felony."

This was clearly an instruction as to criminal responsibility and the court held that the refusal to give such instruction was proper and said, at page 169:

"The refusal to instruct as to the criminal responsibility of an intoxicated driver was correct. (See *Greening* v. *Ford* (1932), 127 Cal.App. 462 [16 P.2d 143], where, after injection into a civil action of the question of criminal responsibility, the jury brought in a verdict of 'for the defendant Not Guilty'; on this ground a new trial was granted.) An instruction specifically directed to drunken driving as negligence could have been given but, in the circumstances, the failure of the court to modify and give defendants' proposed instruction does not appear to have prejudiced them."

In the Tossman case the court held that it was not error to refuse to give an instruction on section 540 of the Vehicle

Code of California because said section applies only to the intersection of public highways and not to the intersection of a private road and a public highway and because disobedience of a statute for which criminal sanctions are imposed is not negligence as a matter of law under all circumstances. In this connection, the court said:

"It is settled that disobedience of a statute for which criminal sanctions are imposed is not negligence as a matter of law under all circumstances, but a presumption of negligence arises on proof of such a violation, and the presumption can be rebutted by evidence of justification or excuse." (Citing cases.)

In *Ornales* v. *Wigger*, 35 Cal.2d 474, 479 [218 P.2d 531], the Supreme Court, in discussing an instruction given on the effect of a violation of a Vehicle Code section, said:

"Undoubtedly the instruction given on the effect of a violation of a statute should have been qualified by an instruction on the type of evidence necessary to rebut the presumption of negligence. In the Satterlee case it is said that '. . . the fact which will excuse the violation of a statute has been defined by the court as one resulting "from causes or things beyond the control of the person charged with the violation."' The trial court need not of its own motion give special instructions in the absence of a request therefor by counsel. (*Comstock* v. *Morse,* 107 Cal.App. 71 [290 P. 108]; *Crooks* v. *White,* 107 Cal.App. 304 [290 P. 497]; *Sherman* v. *Kirkpatrick,* 83 Cal. App. 307 [256 P. 570].) In *Baldridge* v. *Cunningham,* 31 Cal. App.2d 128, 132 [87 P.2d 369], where the violation of certain provisions of the Vehicle Code was involved, it was said 'If defendant Cunningham desired a further elaboration upon the instruction relative to the *quantum* of evidence necessary to establish justification or excuse, and thereby rebut the presumption of negligence arising from a violation of the California Vehicle Code, it was her duty to propose the further instruction which she desired and request the court to give it. This she did not do. (*Maus* v. *Scavenger Protective Assn.,* 2 Cal.App.2d 624, 629 [39 P.2d 209].)' (See, also, *James* v. *Myers,* 68 Cal.App.2d 23 [156 P.2d 69], and the cases there cited."

In the instant case no instructions were offered by appellants to qualify the instruction complained of. The evidence was amply sufficient to establish negligence on the part of appellant Zigman without considering the issue of intoxication

concerning which there was a conflict in the evidence. We find no reversible error in the giving of the questioned instruction.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied April 13, 1953, and appellants' petition for a hearing by the Supreme Court was denied May 14, 1953. Carter, J., was of the opinion that the petition should be granted.