[Civ. No. 16486. First Dist., Div. One. Nov. 22, 1955.]

ARTHUR W. FLEHARTY, Appellant, v. HENRY LEROY BOLTZEN et al., Respondents.

Benjamin F. Marlowe for Appellant.

Alexander, Bacon & Mundhenk and Herbert Chamberlin for Respondents.

WOOD (Fred B.), J.—Plaintiff sustained personal injuries and property damage when his automobile collided with a truck owned by defendants Louis and Guido Stagi and driven by defendant Boltzen, on Highway 4 at or near Fourth Street in Oakley, California, about 1:30 p. m. on June 23, 1952. Verdict and judgment were for the defendants and plaintiff has appealed.

Plaintiff requested and the court refused instructions on last clear chance. The only questions upon this appeal are whether or not it was error not to give appropriate instructions on that subject* and, if error, was it prejudicial?

---

*Defendants are not questioning the accuracy of the text of the proposed instructions (merely that the evidence did not present a case for instructing the jury on that subject).

Accordingly, we are not considering or deciding whether those instructions correctly state the law on the subject of last clear chance.

The first question narrows down to the issue whether there is substantial evidence of the existence of the second and third of the three elements necessary to bring the doctrine into play.† As stated by the defendants, it was necessary for the plaintiff "to show by substantial evidence that the truck driver had actual knowledge that plaintiff was in a position of danger and that the truck driver had such knowledge in time to have had a clear chance to avoid the collision." They claim that under any view of the evidence plaintiff's own act put him in the dangerous position practically simultaneously with the collision, rendering it impossible for the truck driver to become aware of plaintiff's danger in time to act. ▮ Plaintiff erroneously claims it is sufficient

†"Whether or not the doctrine of last clear chance applies in a particular case depends wholly upon the existence or nonexistence of the elements necessary to bring it into play. The doctrine presupposes: '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.' (*Daniels* v. *City & County of San Francisco, supra,* 40 Cal.2d 614, 619 [255 P.2d 785].) If any one of these elements is absent, the doctrine does not apply and the case is governed by the ordinary rules of negligence and contributory negligence. (*Palmer* v. *Tschudy,* 191 Cal. 696, 700 [218 P. 36].)" (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 483 [283 P.2d 1].)

The "question to be determined here is whether there is substantial evidence to meet the essential requirements for invocation of that doctrine." (*Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 635 [255 P.2d 795].) The evidence must be viewed "in the light 'most favorable to the contention that the [last clear chance] doctrine is applicable . . . since plaintiff is entitled to an instruction thereon if the evidence so viewed could establish the elements of the doctrine' . . ." (Same, p. 633.)

If "it cannot be said as a matter of law that the evidence was insufficient to justify the application of the last clear chance doctrine," the jury should be instructed concerning that doctrine. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [255 P.2d 785].)

"The question of whether there is any substantial evidence, conflicting or otherwise, which could justify the application of the last clear chance doctrine in a given case, is a question of law; and in the absence of such evidence, it is error for the trial court to instruct the jury concerning that doctrine. [Citations.] On the other hand, if there is such substantial evidence, conflicting or otherwise, the question of whether the defendant should be held to have had a last clear chance to avoid the accident is a question of fact to be determined by the jury under appropriate instructions. [Citations.]" (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 487 [283 P.2d 1].)

to show that defendant by the use of reasonable care should have known of plaintiff's dangerous position. The requirement of actual knowledge still obtains although in a given case the evidence may warrant an inference that defendant had such knowledge despite his testimony to the contrary. (*Selinsky* v. *Olsen*, 38 Cal.2d 102, 105 [237 P.2d 645] ; *Jobe* v. *Harold Livestock Com. Co.*, 113 Cal.App.2d 269, 273, 274 [247 P.2d 951].) Knowledge of danger is "imputed where the circumstances are such as to convey to the mind of a reasonable man that the plaintiff is in a position of peril." (*Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 637 [255 P.2d 795].) Plaintiff further claims there is substantial evidence that defendant had such actual knowledge and acquired it in time to avoid the collision.

■ Highway 4 runs north and south. Third and Fourth Streets enter it from the west and end in it, do not extend beyond it to the east. Fourth Street lies 318 feet to the south of Third Street. The paved portion of Highway 4, which lies some distance (perhaps 10 to 15 feet) to the east of the west curb, is 26 feet wide and is divided into north and southbound lanes by a broken white center line.

Plaintiff testified that he had parked his car along the west curb of Highway 4 about 60 feet south of Third Street. He then had lunch and upon his return, before pulling away from the curb, he looked for traffic and let one car pass. Seeing no other cars approaching from the rear, he put out his hand and proceeded into the southbound traffic lane; when he reached it, he took his hand in and then traveled parallel to the center line for about 200 feet. When 50 feet from Fourth Street, traveling 3 to 5 miles an hour, he gave a hand signal for a left turn and held his hand out until he reached Fourth; when in the intersection, again looking in his rear view mirror and seeing no car coming, he gave a left turn hand signal, turned left and when his front wheels were 1 to 1½ feet over the center line the collision occurred. He did not see the truck until the impact.

Defendant Boltzen testified that he was traveling south on Highway 4 at 18 to 20 miles per hour. When he had just passed Third Street he saw plaintiff's car when the latter was moving away from the curb, about the middle of the block; it was 3 or 4 feet from the curb. Thereupon, Boltzen honked his horn. Plaintiff's car continued to travel in a diagonal line to the point of impact. When he saw plaintiff's car move over toward the center of the street

Boltzen moved over into the left lane to go around plaintiff. He got his truck all the way around and then felt the impact, when the truck was about 1 to 1½ feet to the left of and parallel to the center line; about two-thirds down the block or about 50 feet from Fourth Street. Boltzen at no time saw plaintiff make a hand signal.

A traffic officer who investigated the accident testified that the point of impact was about 100 feet north of Fourth Street, basing his opinion upon debris on the highway and tire abrasions on the pavement.

The right hand side of the truck was hit. The left front fender, door and windwing of plaintiff's car were damaged.

It is quite apparent that plaintiff was not in a position of danger until he crossed the center line. When he did cross it he only had a foot or a foot and a half to go when he hit defendant's truck. There was no time then for defendant to do anything to avoid the accident. The fact that plaintiff approached the center line along a straight course, diagonally from the curb, to the knowledge of defendant, was no notice or warning to defendant that plaintiff was approaching a position of danger from which he would be unable to extricate himself. His leftward diagonal movement toward the center was quite natural, necessary in getting from the curb (an appreciable distance from the pavement) over onto the paved southbound lane. That was no warning or notice to defendant that plaintiff would continue in that direction across the center line and into the northbound lane. Defendant was entitled to assume that plaintiff would observe traffic regulations, straighten out and run parallel to the center line and to the right of it when he reached it.

If we take plaintiff's version that he made a left turn in the Fourth Street intersection the situation is the same. The moment he crossed the center line he collided with defendant's truck. Until he made the turn he was not in a position of danger and until then defendant had no knowledge of approaching danger for he says he saw no signal and there is no evidence which requires an inference that he must have seen a timely left turn signal.

■ The doctrine of last clear chance " 'should not be applied to the ordinary case in which the act creating the peril occurs practically simultaneously with the happening of the accident and in which neither party can fairly be said to have had a *last clear chance* thereafter to avoid the consequences.' '' (*Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 295 [246

P.2d 663].) In the Rodabaugh case the defendant, traveling 40 miles an hour on a through highway, observed the decedent approaching on a crossroad at about the same rate of speed when the latter was 500 feet away and defendant about the same distance from the intersection. When defendant was only 75-100 feet from the intersection he observed that the decedent was not slowing down and thereupon commenced to apply his brakes but there was not sufficient time left to avoid the collision. The evidence was held "insufficient to support a finding that after defendant discovered decedent's peril, he had a last clear chance to avoid the collision. The fact that defendant saw that decedent was looking straight ahead while decedent was traveling approximately 500 feet in approaching the intersection does not establish that decedent was in a position of danger this entire distance. Decedent was not in a position of danger until he arrived at a point at which he could no longer stop or slow down in time to avoid a collision. (*Dalley* v. *Williams, supra,* 73 Cal.App.2d 427, 435 [166 P.2d 595]; also *Young* v. *Southern Pac. Co.,* 182 Cal. 369, 380-381 [190 P. 36].) Defendant had the right to assume that decedent possessed normal faculties, and that he saw the stop warnings which were directly within the range of his vision. (*Folger* v. *Richfield Oil Corp.,* 80 Cal.App.2d 655, 660-661 [182 P.2d 337].)" (P. 294.)

Similarly, of pedestrians who crossed a street in the middle of a block in the path of an oncoming bus, the Supreme Court has said: "Therefore plaintiffs' act of negligence in leaving a place of safety and stepping directly into the path of the oncoming bus necessarily occurred almost simultaneously with the happening of the accident. Under these circumstances, such negligence cannot be deemed 'remote in causation,' and it cannot be said that defendants thereafter had a last clear chance to avoid the accident." (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 490 [283 P.2d 1].)

In *Mahnkey* v. *Bolger,* 98 Cal.App.2d 628 [220 P.2d 824], it appeared that plaintiff was driving north in his inner lane and according to his testimony when a little less than 25 feet from the intersection he signaled a left turn, pulling it in when he reached the intersection. At the center of the intersection he made a sharp left turn athwart defendant's oncoming car. Defendant testified he saw plaintiff's car only a few seconds before the accident when plaintiff was about to cross over in front of him. He said he was 20 feet from the intersection when he first saw plaintiff's car start to turn, where-

upon he applied his brakes. His car started to skid, so he then tried to go around plaintiff into the intersecting street but could not make it, so he again applied his brakes. Concerning the applicability of the last clear chance doctrine in such a case, this court said: "There is no evidence that defendant saw plaintiff's car sooner, but even if it could be inferred from the evidence that he did see plaintiff's car sooner it is difficult to see how defendant could realize that plaintiff was in a position of danger until plaintiff made the left-hand turn; and it is difficult also to see how defendant could have a last clear chance to avoid the collision after plaintiff made the left-hand turn. In order to make the doctrine of last clear chance applicable, we must assume that plaintiff was, as a result of his negligence, in a position of danger, which would mean that he negligently made a left-hand turn into the path of defendant's oncoming automobile. Defendant's car must have been close to the intersection or there would have been no collision. Defendant could not know that plaintiff was in a position of danger until plaintiff turned into his path, and then it was too late for defendant to have a last clear chance to avoid the collision. We believe that the instant case was one in which the questions of negligence and of contributory negligence should have been left to the jury, but we are convinced that it was prejudicial error to submit the issue of last clear chance to the jury." (P. 634.)

These are not isolated holdings. Similar rulings were made in *Johnson* v. *Southwestern Eng. Co.*, 41 Cal.App.2d 623, 626-628 [107 P.2d 417]; *Jones* v. *Heinrich*, 49 Cal.App.2d 702, 706-707 [122 P.2d 304]; *Dalley* v. *Williams*, 73 Cal.App. 2d 427, 431-437 [166 P.2d 595]; *Jobe* v. *Harold Livestock Com. Co.*, 113 Cal.App.2d 269, 273-276 [247 P.2d 951]; *Hazelett* v. *Miller*, 115 Cal.App.2d 801, 805-807 [252 P.2d 997]; *Mehling* v. *Zigman*, 116 Cal.App.2d 729, 732-734 [254 P.2d 141]; *Schouten* v. *Crawford*, 118 Cal.App.2d 59, 63-65 [257 P.2d 88]; and *Story* v. *Cox*, 130 Cal.App.2d 231, 232-234 [278 P.2d 720].

Accordingly, we find no error in the court's refusal to instruct upon the doctrine of last clear chance. In view of this conclusion it is unnecessary to consider whether the refusal, if erroneous, would have been prejudicial.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.