[Civ. No. 19801. First Dist., Div. Two. May 16, 1963.]

YANDELL TRUCKAWAY, INC., Plaintiff and Appellant, v. THE WESTERN PACIFIC RAILROAD COMPANY, Defendant and Respondent.

Weinmann, Rode, Burnhill & Moffitt and Cyril Viadro for Plaintiff and Appellant.

Hagar, Crosby & Rosson, Edwin A. Heafey, J., and Richard G. Logan for Defendant and Respondent.

AGEE, J.—The front end of defendant's freight train collided with the right side of plaintiff's truck and trailer, which were stopped on the railroad track. This occurred on a clear, dry weekday in August, about 4:30 p.m., at the Davis Street crossing, in the City of San Leandro.

Plaintiff sued for damages to the truck and defendant cross-complained for damages to the train. Trial by jury resulted in a verdict that neither party recover. Plaintiff appeals from the adverse portion of the judgment entered upon the verdict. Defendant has not appealed.

The only issue before us to determine is whether the trial court erred in refusing to instruct on last clear chance. The instruction proposed by plaintiff is admittedly correct as to *form*, it being drafted from BAJI 205 (rev.), which in turn is based upon *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432].

The three elements necessary for the application of the doctrine are set forth in *Brandelius, supra,* at page 743: "(1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise

such last clear chance, and the accident occurred as a proximate result of such failure.''

The proposed instruction concludes as follows: ''If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions the law holds the defendant liable for any injury suffered by the plaintiff and proximately resulting from the accident, despite the negligence of the plaintiff.''

Defendant does not contend that the evidence is insufficient to support a finding of the existence of elements (1) and (2). The controversy is narrowed to element (3). Defendant states its position as follows: ''Specifically, it is our contention there is no substantial evidence that after the engineer became actually aware that the truck driver was in a position of peril, the engineer had the last clear chance to avoid the accident by the exercise of ordinary care.''

The railroad track runs north and south. Davis Street runs east and west. They intersect each other at right angles. The train was northbound. The truck was eastbound. The track is straight for approximately 1,000 feet to the south of Davis Street.

Plaintiff's rig consisted of a truck and trailer, having an overall length of approximately 60 feet. There are two eastbound lanes for traffic on Davis Street and the truck was in the lane next to the center line. Traffic was extremely heavy in both directions and was jammed up solidly, both in front of and behind the truck. As the truck started across the track, the traffic ahead of it came to a complete stop. Plaintiff's driver was unable to move it sufficiently, either forward or backward, to get it off the track. While in that position, the wig-wag signal began to operate and plaintiff's driver saw the train coming around a bend and into the straight stretch of track. The train struck the right side of the truck, toward the rear.

Element (1) is sufficiently established by the evidence. The jury could have concluded therefrom that plaintiff's driver had placed the truck in a position of danger from which, because of his own negligence in doing so, it became physically impossible to escape. His negligence could be found to consist of going upon the track when it should have been apparent to him that he might be required to stop on the track because of the traffic jam ahead.

■ Element (2) may be established from the testimony of the defendant's engineer himself. He stated that "I knew he [the truck driver] was hemmed in" and was "in trouble."

■ Element (3) involves two important issues of fact. One, the distance of the train from the truck when the engineer realized that the truck was unable to move off of the track. Two, whether the engineer then had the last clear chance to avoid a collision by exercising ordinary care.

The engineer testified that he knew that traffic on Davis Street was heavy in the late afternoon on weekdays; that he saw the truck move forward a short distance twice, "apparently trying to move off" the track; that when he saw the truck "move twice and then stop each time, *I knew he was blocked in* and I went to the emergency with the brake equipment"; that the train's speed at that time "could have been anywhere from 10 to 13-miles per hour," and the train was 300 feet from the crossing. (Italics ours.)

There were other witnesses who testified to a lower speed. In fact, the engineer himself testified in his deposition that the train's speed was 8, 9 or 10 miles an hour. At the trial he stated that he "had answered that question without giving it much thought." There was also evidence from which it could reasonably be inferred that the engineer had the necessary knowledge of the truck's position of danger before he admitted having such knowledge. (*Fleharty* v. *Boltzen*, 137 Cal.App.2d 187, 190 [290 P.2d 311].)

Assuming, however, the speed and distance testified to by the engineer, the testimony of plaintiff's expert witness establishes that the engineer had the "last clear chance to avoid the accident" if, in fact, he had made an emergency application of the brakes when the train was 300 feet from the crossing.

This expert gave the stopping distance of such a train, *under the conditions as related by the engineer*, as follows: at 10 miles per hour, 129 feet; at 11 miles per hour, 149 feet; at 12 miles per hour, 168 feet; and at 13 miles per hour, 189 feet.

Defendant complains that the expert did not take into consideration whether the train was "bunched" or "stretched" at the time in question. It is defendant's position that it takes longer to stop a "stretched" train. By this expression is meant that the draw bar connecting each car is stretched out

to its full length, thereby creating a slack which is taken up suddenly when an emergency application of the brakes is made.

However, the record shows that the expert was questioned about this and he testified as follows: ''It doesn't make any particular difference. . . . There would be a little difference in the action but it doesn't take very long to bunch them.'' Even defendant's engineer testified that, at 10 miles an hour, he could have stopped this *stretched* train in considerably less than 300 feet.

It is well established that if there is evidence which would reasonably support a recovery on the basis of the last clear chance doctrine, it is reversible error to fail to instruct thereon. (*Sills* v. *Los Angeles Transit Lines* (1953) 40 Cal.2d 630, 633 [255 P.2d 795]; *Bonebrake* v. *McCormick* (1950) 35 Cal.2d 16 [215 P.2d 728].)

Judgment reversed.

Kaufman, P. J., and Shoemaker, J., concurred.